## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| **Robert Thomas Thompson, Jr.,** | ) | **Case No. 19-50263** |
| | ) | |
| **Debtor.** | ) | **Chapter 7** |
| | ) | |
| | ) | |
| **United States Trustee,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Adv. No. 20-5002** |
| | ) | |
| | ) | |
| **Robert Thomas Thompson, Jr.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### MEMORANDUM OPINION

Plaintiff Daniel Casamatta, the acting United States Trustee, brings the present case under 11 U.S.C. § 727(a)(4)(A), asking the court to deny defendant Robert Thompson, Jr.'s chapter 7 discharge. For the following reasons, the court determines Thompson knowingly and fraudulently omitted from his bankruptcy filings material information concerning his recent criminal conviction, a related restitution order, and his creditors' claims. Consequently, Thompson may not receive a discharge in this case.

### JURISDICTION

The court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 1334 and 157(a). This case is statutorily core under 28 U.S.C. § 157(b)(2)(J) and

is constitutionally core.  The court therefore has authority to hear this case and make

a final determination.  No party has contested jurisdiction or the court's authority to

make a final determination.

## BACKGROUND

The parties stipulated to many of the facts relevant to the present dispute.

From 1975 to 2015, Thompson practiced law in the state of Georgia, specializing in

employment law and, later in his career, foreclosure defense.   But in 2010,

Thompson's mental health deteriorated, setting in motion events that would

culminate in his disbarment and criminal indictment.

Though many of the details of Thompson's disciplinary case and criminal

indictment are not relevant to the present dispute, their outcomes are.  In February

2015, the Supreme Court of Georgia entered an order disbarring Thompson for,

among other reasons, charging a client $15,000 for legal services Thompson allegedly

did not provide.   In 2017, a grand jury indicted Thompson in the Circuit Court of

Fulton County on thirty separate counts of theft by taking by a fiduciary for allegedly

misappropriating a combined $256,402 from twenty-six of his former clients, and two

counts of forgery for allegedly falsifying an affidavit in his disciplinary case.

In September 2018, Thompson pled guilty to all counts.  During the plea

hearing, the Fulton County prosecutor recommended a five-year sentence, with

Thompson to serve only sixty days in prison and the remainder on conditional

probation.  The prosecutor also recommended that the court order probation on the

conditions that Thompson (1) make two separate $50,000 restitution payments to be

2

distributed according to a restitution chart the prosecutor created; and (2) not directly or indirectly contact his victims. Under the restitution chart, any restitution payments Thompson made would be distributed among his victims and the Georgia Bar Client Fund (which had paid $133,805 to reimburse his victims). To mitigate the court's concerns about the requested no-contact order, the parties agreed at the plea hearing that any such order would not prohibit Thompson from participating in any civil litigation related to his crimes.

The court adopted most, but not all, of the prosecutor's recommendations. As recommended, it imposed a five-year sentence. But it ordered Thompson to serve six months—rather than the recommended sixty days—in prison. And rather than imposing conditional probation, it suspended the remaining four and one-half years of Thompson's sentence on two conditions: (1) Thompson pay $50,000 in restitution within thirty days of the plea hearing date, and another $50,000 within two and one-half years after he completed his six-month prison sentence; and (2) he not engage in the practice of law or accept any position of trust. The court did not expressly impose a no-contact order during the plea hearing and Thompson presented no evidence that it ever imposed such an order.

Thompson subsequently complied with many of the court's orders. He served six months in prison from October 1, 2018, to March 26, 2019. On October 10, 2018, he paid his first $50,000 restitution payment, using funds his family members gifted him. Consequently, the Fulton County Circuit Court provisionally suspended the remaining four and one-half years of his sentence. But if he does not pay the second

$50,000 restitution payment by April 21, 2021, the Fulton County Circuit Court will reinstate his remaining sentence.

On June 11, 2019, approximately three months after his release from prison, Thompson filed with this court his chapter 7 voluntary petition. The court appointed Bruce Strauss as the chapter 7 trustee in the case. Strauss later determined that Thompson had no nonexempt property available for distribution to unsecured creditors and filed a report of no distribution in the case.

Also on June 11, 2019, Thompson filed his creditor mailing matrix, statement of financial affairs, and bankruptcy schedules. Together with those documents, he filed and electronically signed the following: (1) a "verification of creditor mailing matrix," verifying that his creditor mailing matrix was "true and correct to the best of [his] knowledge"; (2) part 12 of his statement of financial affairs, declaring under penalty of perjury that the answers in that document were true and correct; and (3) a "declaration about an individual debtor's schedules," declaring under penalty of perjury that he had "read the summary and schedules filed with th[e] declaration and that they [were] true and correct."

Despite these signed declarations, Thompson's June 11 creditor mailing matrix, schedules, and statement of financial affairs were neither accurate nor complete. He omitted from his Schedule E/F and creditor mailing matrix the Georgia Bar Client Fund and the twenty-four former-client victims who had not commenced civil cases against him. Though he listed the "Clerk of Superior Court of Fulton Count[y]" and "Clerk of Court Fulton County State Court" as "Others to Be Notified

4

About a Debt [He] Already Listed," respecting his debts to the two victims who had filed civil actions against him, he did not list Fulton County as a creditor or otherwise schedule his remaining restitution debt. Finally, he omitted from his statement of financial affairs the Fulton County criminal case.

On July 5, 2019, and again on August 2, 2019, Thompson appeared with counsel Ronald Jurgeson at his § 341 meetings of creditors. At both meetings, Thompson testified that his schedules were true and correct, and that he had disclosed all assets and liabilities.

Thompson brought to the July 5 § 341 meeting his trustee questionnaire, which included a signed acknowledgment that "the information given to the trustee in th[e] questionnaire is upon affirmation under penalty of perjury and will be considered as part of [his] § 341 meeting testimony." He gave the following responses to the trustee questionnaire: (1) "Yes" to question 8(a), verifying that "[t]o the best of [his] knowledge and belief" "the information in [his] petition, schedules, statements and related documents [was] true and correct"; (2) "Yes" to question 8(d), certifying that he read those documents before he signed them; (3) "No" to question 8(e), "are you aware of any error or omissions in your bankruptcy filing that you need to bring to the Chapter 7 Trustee's attention at this time"; (4) "Yes" to question 8(g), "[d]id you list and identify all of your creditors on your schedules that were filed with the Clerk of the Bankruptcy Court"; and (5) "Yes" to question 8(h), affirming that he had "listed in [his] schedules all [his] liabilities and debts, whether or not [he] wished to include them in the bankruptcy, or whether or not [he] wanted the creditor to know about

[his] bankruptcy."

Unaware of the information Thompson omitted from his bankruptcy filings, Strauss did not question Thompson about his criminal case or related debts during the July 5 § 341 meeting.  Thompson did not voluntarily disclose that information.

Five- days after Thompson's July 5 § 341 meeting, counsel for Cindi Bentley, one of the two victims who had filed civil actions against Thompson, entered an appearance in Thompson's bankruptcy case.  Twelve days later, together with amendments to his schedules not at issue in this case, Thompson filed an amended statement of financial affairs and verification of amended schedules disclosing the criminal case for the first time.  Thompson alleges that Strauss' probing questions at the July 5 § 341 meeting—not the entry of appearance—motivated him to disclose the criminal case.

His amended schedules and statement of financial affairs did not, however, disclose Thompson's obligations to the Georgia Bar Client Fund, his twenty-four omitted victims, or the Fulton County Circuit Court (together, the "omitted parties"). And to date, Thompson has neither amended his schedules to disclose those obligations nor filed an amended mailing matrix with this court.  He also proffered no evidence at trial establishing that the Georgia Bar Client Fund or any of the remaining twenty-four victims have ever received notice of his bankruptcy case.

Counsel for the United States Trustee conducted a Rule 2004 examination of Thompson in January 2020.  At that examination, Thompson swore an oath to tell the truth in his responses to questions asked.  He testified in relevant part that (1)

at the time he filed his bankruptcy case, he was aware that his former clients alleged he took their money; and (2) he did not disclose the criminal case because he "probably just forgot it," "probably just overlooked it," and "[i]t was not something that was dischargeable in any fashion."

Thompson further explained his omissions during his August 2020 deposition. There, he testified that he did not disclose the criminal case because he "knew if [he] didn't list it, it couldn't be discharged," and he "didn't want to stir up all those people and the DA's office and have all sorts of chaos and questions about [his bankruptcy filing]." Though he admitted he was aware on the petition date that he still owes the remaining $50,000 restitution obligation, he said he omitted that obligation from his schedules because he does not have to pay it if he serves his suspended sentence. Finally, he explained that, though he knew on the petition date that his victims allege he owes them money, he omitted them because "they received all the money that they were going to get from the Georgia Bar [Client Fund] and the times of their civil claim[s] had run out under the statute of limitations."

At the October 2020 trial on this matter, Thompson clarified that he was also motivated to omit his victims by a desire to prevent them from inundating the DA's office, his criminal attorney, and this court with questions concerning his bankruptcy case.

The United States Trustee argues (1) Thompson's sworn verifications, declarations, and § 341 meeting testimony that his bankruptcy schedules were accurate and complete all constitute false statements under oath; (2) Thompson knew

his statements were false; (3) Thompson made the false statements knowingly and with fraudulent intent; and (4) those statements relate materially to this case because they gave the court significantly inaccurate information concerning Thompson's financial affairs and deprived his creditors of the opportunity to meaningfully participate in his bankruptcy.

Thompson argues (1) his statements were not false because the Bankruptcy Code does not require him to disclose the omitted parties or their interests; (2) because his statements were not false, he could not have known of their falsity; (3) any false statements were not material because they did not affect the available distribution to his creditors; and (4) he lacks fraudulent intent because he believed in good faith that the Bankruptcy Code does not require disclosure and that a no-contact order prohibited him from notifying his victims about his bankruptcy case.

Having outlined the relevant background information, the court turns to the merits of the present dispute.

## BURDEN OF PROOF

As the party asking the court to deny Thompson's discharge, the United States Trustee bears the burden to prove each element of its complaint by a preponderance of the evidence. *See, e.g.*, *Ellsworth v. Bauder (In re Bauder)*, 333 B.R. 828, 832 n.16 (B.A.P. 8th Cir. 2005) (citing *Floret, LLC v. Sendecky (In re Sendecky)*, 283 B.R. 760, 763 (B.A.P. 8th Cir. 2002)).

## DISCUSSION

"Bankruptcy provides debtors with a great benefit: the discharge of debts. The

price a debtor must pay for that benefit is honesty and candor." *Home Serv. Oil Co. v. Cecil (In re Cecil)*, 542 B.R. 447, 454 (B.A.P. 8th Cir. 2015) (quoting *Bauder*, 333 B.R. at 834 (Schermer, J., dissenting)). Section 727(a)(4)(A) of the Bankruptcy Code enforces the price of a discharge. It empowers courts to withhold discharge from debtors who "knowingly and fraudulently, in or in connection with a case—(A) made a false oath or account." 11 U.S.C. § 727(a)(4)(A).

To prevail under § 727(a)(4)(A), the petitioning party must prove the following elements by a preponderance of the evidence: "(1) the [d]ebtor made a statement under oath; (2) the statement was false; (3) the [d]ebtor knew the statement was false; (4) the [d]ebtor made the statement with fraudulent intent; and (5) the statement related materially to the [d]ebtor's bankruptcy case." *Cecil*, 542 B.R. at 451. The court will analyze each element in turn.

### i.   *Thompson made statements under oath;*

To deny a debtor's discharge, the court must first determine the debtor made a statement under oath. Because a debtor must sign his or her schedules and statements of financial affairs under penalty of perjury, statements in those filings constitute "oaths" for the purposes of § 727(a)(4)(A). *Kaler v. Charles (In re Charles)*, 474 B.R. 680, 684 (B.A.P. 8th Cir. 2012). Statements a debtor makes at § 341 meetings are also made under oath. *See Korte v. IRS (In re Korte)*, 262 B.R. 464, 474 (B.A.P. 8th Cir. 2001) ("testimony elicited at the first meeting of creditors is given under oath").

The statements at issue in this case are Thompson's statements that his

bankruptcy filings were accurate and complete.  He made those statements at his § 341 meetings and in signed verifications and declarations attached to his bankruptcy filings.  Thompson therefore made "statements under oath" for the purposes of § 727(a)(4)(A).

### ii.      *The statements were false;*

The court must also determine whether the relevant statements were false. Ordinarily, falsity is a question of fact the bankruptcy court must determine by assessing the evidence presented at trial.  *See Charles*, 474 B.R. at 684–85 (explaining lower court's determination of falsity).   But in this case, Thompson's arguments concerning falsity are legal, not factual.  He interprets the defined terms "creditor," "debt," and "claim" to exclude the omitted parties and their interests against him, and argues he correctly omitted them and their interests under applicable law. Consequently, the court must determine falsity in this case by applying the evidence before it to the statutes and caselaw defining the relevant terms.

The Bankruptcy Code broadly defines the terms "creditor," "debt," and "claim" to include a wide range of parties and their interests against the estate.  *See, e.g.*, *Pennsylvania Dep't of Pub. Welfare v. Davenport*, 495 U.S. 552, 557–58, (1990) (construing "debt" and "claim").  The term "creditor" means a "[party] that has a claim against the debtor that arose at the time of or before [the petition date]." 11 U.S.C. § 101(10); *see also id.* § 101(15) (defining "entity").  A "debt" is a "liability on a claim." *Id.* § 101(12).  And a "claim" includes any "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured,

unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." *Id.* § 101(5).

Determining whether a creditor holds a claim against the bankruptcy estate is often a question of timing.   Courts typically adopt one of three approaches to determine when a creditor's claim arises: (1) the "conduct approach," (2) the "relationship approach," or (3) the "accrual approach."  *See, e.g.*, *Cantu v. Schmidt (In re Cantu)*, 784 F.3d 253, 258–60 (5th Cir. 2015) (summarizing circuit split).  Under any of the competing approaches, a creditor holds a claim against the bankruptcy estate if, on or before the petition date, all of the following occurred: (1) the parties engaged in conduct giving rise to a legally-recognized interest against the debtor; (2) a "relationship, such as contact, exposure, impact, or privity" arose between the debtor and creditor; and (3) the creditor sustained damage. *See, e.g.*, *Watson v. Parker (In re Parker)*, 313 F.3d 1267, 1269–70 (10th Cir. 2002) (adopting "conduct" approach); *Epstein v. Off. Comm. of Unsecured Creditors of Estate of Piper Aircraft Corp. (In re Piper Aircraft Corp.)*, 58 F.3d 1573, 1577 (11th Cir. 1995) (adopting "Piper" or "modified relationship" approach); *Avellino & Bienes v. M. Frenville Co., Inc. (In re M. Frenville Co., Inc.),* 744 F.2d 332, 337 (3d Cir. 1984) (adopting "accrual" approach), *overruled by Jeld-Wen, Inc. v. Van Brunt (In re Grossman's Inc.)*, 607 F.3d 114, 123–24 (3d Cir. 2010) (adopting "conduct" approach).

In this case, Thompson appears to concede his omission of the criminal case from his original statement of financial affairs renders false his verification of that document.  He makes no argument concerning his omission of the Georgia Bar Client

11

Fund or its claim—another omission that renders false his declaration that his schedules were accurate and complete.

However, he alleges all other relevant statements were not false, arguing the omitted parties are not his "creditors" and their interests against him are not "claims."  As to the twenty-four omitted victims, he appears to argue his bankruptcy filings did not require disclosure because (1) the omitted victims had not filed lawsuits against him as of the petition date, (2) his victims have forfeited their rights to file future lawsuits against him because the statutes of limitations have allegedly run on their potential causes of action, (3) he satisfied his obligation to disclose his victims' interests by scheduling the "Clerk of Court Fulton County State Court" and "Clerk of Superior Court of Fulton Count[y]" as notice parties in his case, and (4) the payments his victims received from the Georgia Bar Client Fund and his first restitution payment satisfied some of their claims.  As to his omission of the remaining $50,000 restitution obligation, he argues the obligation is not a "debt" "as far as this bankruptcy is concerned" because it is nondischargeable and because he can escape his obligation to pay it if he serves his remaining prison sentence.

Thompson's arguments are untenable under established law.

First, his victims' interests against him are claims even if they had not filed lawsuits against him as of the petition date.   Section 101(5) states that the term "claim" includes a "right to payment, whether or not reduced to judgment."  11 U.S.C. § 101(5).  Thompson concedes that he was aware at the time he filed his bankruptcy case that his victims allege he stole money from them.  Under the facts outlined in

his criminal indictment, his victims might have civil causes of action against him, including, for example, legal malpractice. The conduct, relationship, and damage relevant to those potential causes of action all preceded Thompson's bankruptcy. Though Thompson may dispute the viability of any potential lawsuits, § 101(5) explicitly defines the term "claim" to include a "disputed" "right to payment." *Id.* Thus, Thompson's victims have claims against him that arose before the petition date.

Second, Thompson's allegation that the statute of limitations has run on his victims' claims does not excuse his nondisclosure. Under Georgia law, the expiration of a statute of limitations does not extinguish a civil cause of action; an expired statute of limitations is an affirmative defense a defendant "may elect to take advantage of or waive as he pleases." *Focus Healthcare Med. Ctr., Inc. v. O'Neal*, 558 S.E.2d 818, 820 (Ga. Ct. Ap. 2002) (quoting *Searcy v. Godwin*, 201 S.E.2d 670, 672 (Ga. Ct. Ap. 1973)); *Georgia Civil Practice Act*, Ga. Code Ann. § 9-11-8(c). Though Thompson perhaps could have asserted statute of limitations as applicable to object to any proofs of claim his victims filed in his bankruptcy case, the existence of this potential affirmative defense does not negate the underlying claims. *See Casamatta v. Regent Cap. Servs., L.P. (In re Freeman-Clay)*, 578 B.R. 423, 438–39 (Bankr. W.D. Mo. 2017) (holding expired statute of limitations available as a defense under § 502(b)(1) but did not prohibit creditor from filing proof of claim). Thus, under the Bankruptcy Code and Georgia law, Thompson's victims held claims against him on the petition date, despite any available statute of limitations defenses.

Third, listing the clerks of court as "Others to Be Notified About a Debt That [He] Already Listed" did not satisfy Thompson's independent duty to schedule all his victims. Though the Circuit Court of Fulton County may ultimately distribute Thompson's restitution payments to his victims, the victims' relationship to Thompson and the implications of the payments they might receive make their interests materially different from those of the court. Because his victims' interests in receiving distributions from his restitution payments are distinct from the Fulton County Circuit Court's interest in the restitution payments, his duty to schedule all individual victims existed independently from his duty to list the clerks of court as "Others to Be Notified" about his victims' claims.

Moreover, his victims' claims transcend their interests in receiving distributions from Thompson's restitution payments. For example, they might have distinct civil claims for legal malpractice, actions to recover costs not included in the prosecutor's restitution calculation, and other potential civil actions that exist without regard to the restitution judgment. Thus, listing the clerks of court as notice parties did not satisfy Thompson's independent duty to schedule his victims as having other potential civil claims against him.

Furthermore, under the facts of this case, Thompson's argument that he satisfied his disclosure obligation to by scheduling the clerks of court as notice parties is inapposite. He neither scheduled the restitution obligation as a debt nor listed the Fulton County Circuit Court or Prosecutor's Office as a creditor in his case. Thus, merely listing the clerks of court as "Others to Be Notified About a Debt That [He]

Already Listed" did not satisfy his independent duty to list his victims as creditors and notify them of his bankruptcy. His omission of the restitution obligation coupled with his omission of his victims' claims renders false his statements that his schedules were accurate and complete.

The record also does not support Thompson's assertion that his first restitution payment and the payments his victims received from the Georgia Bar Client Fund satisfied their claims. Thompson concedes that some of his victims have not received the entire amount they are entitled to receive under the restitution chart. At a minimum, his omission of the victims who have not received full payment renders false his statements that his schedules were accurate and complete. And, for the reasons explained above, Thompson should have disclosed the victims who have allegedly received full payment as having other potential causes of action. His statements respecting the accuracy of his bankruptcy filings were therefore false under § 727(a)(4)(A).

Finally, Thompson's omission of the remaining $50,000 restitution obligation also renders false his statements concerning the accuracy of his bankruptcy filings. Thompson appears to argue the remaining restitution obligation is not a debt because the restitution order is rehabilitative, rather than compensatory, in nature, and because he may escape the obligation by serving his remaining sentence.

Thompson's arguments are misplaced. Neither the purpose of his obligation nor his ability to escape it alter its status as a debt. The purpose of his restitution obligation does not alter its status as a "liability on" a "right to payment." It is

therefore a "debt" under the plain language of §§ 101(12) and (5). His ability to escape the obligation makes his debt contingent. But because § 101(5) explicitly defines the term claim to include a "contingent" "right to payment," it does not excuse his nondisclosure.

Moreover, Thompson's disclosures contradict his argument. He simultaneously omitted his contingent restitution obligation (because he does not have to pay it if he returns to prison) and his non-contingent victims' claims (because he believes the restitution obligation substitutes those claims). But if he does not pay the restitution obligation, he cannot rely on it to satisfy his victims' claims. Consequently, at a minimum, he should have disclosed either his obligation to repay his victims or his obligation to pay the restitution obligation. His simultaneous omission of both obligations renders his arguments concerning the truth of his statements internally inconsistent and disingenuous. Thus, Thompson made false statements in this case.

### iii.    *Thompson knew the statements were false;*

Next, the court must determine whether the debtor knew his or her statements were false. In determining a debtor's knowledge of false statements concerning omitted information, the court may rely on evidence that the debtor (1) knew the omitted information existed, and (2) understood the requirement to disclose it. *See Cepelak v. Sears (In re Sears)*, 246 B.R. 341, 349 (B.A.P. 8th Cir. 2000) (analyzing debtor's knowledge of omissions). Evidence that the instructions requiring disclosure were clear may support an inference that the debtor understood the requirement to

disclose the omitted information. *Id.* A debtor's bare assertion that he or she misunderstood the instructions requiring disclosure will not defeat otherwise convincing evidence that the debtor knew the information and understood the requirement to disclose all pertinent information in bankruptcy. *See Lincoln Sav. Bank v. Freese (In re Freese)*, 460 B.R. 733, 739 (B.A.P. 8th Cir. 2011) ("Debtor's alleged failure to understand the information requested on the bankruptcy Schedules and Statements does not provide grounds to withhold information about his business.").

The evidence in this case establishes Thompson knowingly made the relevant false statements.

First, Thompson knew the omitted information existed. He concedes that he knew about his remaining restitution obligation, criminal case, and that his victims allege he stole from them. And to the extent he has not abandoned his assertion that he "probably just forgot" about the omitted information, the court determines he did not forget the omitted information on the petition date, having filed his voluntary petition less than three months after he was released from prison. Thompson therefore knew the omitted information existed.

Second, the court infers from the record before it that Thompson also knew about the requirement to disclose the omitted information. The instructions on his schedules and statement of financial affairs were clear. They explicitly required him to disclose all creditors, claims, and legal actions pending within one year of the petition date. Schedule E/F further instructed him to state whether he disputed each

claim against him.   Combined, these instructions should have alerted any debtor to the requirement to disclose all debts, regardless of any arguments the debtor might make to dispute them.

Thompson is a former foreclosure attorney who routinely litigated the validity of debts; he therefore must have understood the requirement to disclose the criminal case, restitution obligation, and his obligations to his victims and the Georgia Bar Client Fund.   Rather than follow these clear instructions, he deliberately misinterpreted them and contrived baseless legal arguments to justify his nondisclosure.   His reliance on unfounded interpretations of legal terms of art demonstrates that he was familiar with the meaning of the relevant terms, and confirms, rather than negates, his knowledge.   Thompson therefore knowingly made false statements when he swore that his bankruptcy filings were accurate and complete.

### iv. *Thompson made the false statements with fraudulent intent;*

The court must next determine whether the debtor made the false statements with fraudulent intent.   Because direct evidence of fraudulent intent rarely exists, proof of reckless indifference to the truth satisfies this element.   *Korte v. IRS (In re Korte)*, 262 B.R. 64, 474 (B.A.P. 8th Cir. 2001) (discussing together intent and knowledge elements); *Home Serv. Oil Co. v. Cecil (In re Cecil)*, 542 B.R. 447, 451 (B.A.P. 8th Cir. 2015) (same).   The court may infer fraudulent intent from circumstantial evidence, including evidence that the debtor failed to correct his or her false statements when given an opportunity, or evidence that the debtor engaged in

18

a pattern of conduct "so inconsistent with [his] self-serving statement of intent that the proof leads the court to disbelieve the debtor." *See, e.g., Miller v. Kasden (In re Kasden)*, 209 B.R. 239, 244 (B.A.P. 8th Cir. 1997) (quoting *Caspers v. Van Horne (In re Van Horne)*, 823 F.2d 1285, 1288 (8th Cir. 1987)); *Mertz v. Rott*, 955 F.2d 596, 598–99 (8th Cir. 1992) (characterizing numerous omissions and failures to correct as a "significant fact" supporting intent determination).

In this case, Thompson alleges he did not make the statements concerning the accuracy of his bankruptcy filings with fraudulent intent. He argues he could not have acted with fraudulent intent because (1) he believed at the time he made the statements, and still believes, that his filings were accurate and complete; and (2) he omitted his victims based on a good-faith belief that the Circuit Court of Fulton County had entered an order prohibiting him from contacting them.

The record supports the opposite conclusion. At a minimum, Thompson's pattern of omissions establishes that he made the relevant statements with reckless indifference to their truth. As discussed, his arguments in favor of nondisclosure lack legal support and are internally inconsistent. Thus, his reliance on those arguments in determining whether to omit significant financial information was, at best, recklessly indifferent to the alternative interpretations that make the statements false.

But combined with his pattern of nondisclosure and experience as a foreclosure-defense attorney, the baselessness of his legal arguments demonstrates that Thompson acted with fraudulent intent. He made a series of omissions—in

multiple documents and on multiple occasions.  Every omission eroded the accuracy of his bankruptcy filings and prevented his creditors from meaningfully participating in his bankruptcy case.  Every omission also advanced his stated purpose: to avoid "stirring up" his victims.  Despite numerous opportunities, Thompson has not corrected his omissions or notified his victims or the Georgia Bar Client Fund of his bankruptcy case.  This pattern of conduct is so inconsistent with Thompson's statement of honest intent that it causes the court to disbelieve him.

The court also does not believe Thompson's allegation that he omitted his victims because the Fulton County Circuit Court entered an order prohibiting him from contacting them.

First, this allegation is inconsistent with the record in this case.  Though the prosecutor in his criminal case recommended a no-contact order and though Thompson alleges his former criminal attorney recently told him he could not contact his victims, Thompson presented no evidence that the Fulton County Circuit Court ever imposed a no-contact order.  Moreover, he admits that when he was preparing to file his bankruptcy petition, he did not contact the prosecutor's office or Fulton County Circuit Court, or otherwise attempt to determine whether he could notify his victims of his bankruptcy case.  Thus, nothing in the record supports Thompson's assertion that he omitted his victims because he believed he was under a no-contact order.

Second, his stated desire to avoid stirring up his victims better explains both his failure to notify them and his pattern of behavior in this case.  This explanation

is more consistent with his silence when presented with opportunities to clarify the disclosure requirements; his failure to notify a proxy for his victims (such as the Georgia Prosecutor's office, Georgia Board of Patrols and Pardons, or Georgia District Attorney) who might notify his victims of his bankruptcy or represent their interests; and his decision to disclose the criminal case only after counsel for one of his victims entered an appearance in his case.

Evidence that Thompson attempted to cure his omissions, clarify the disclosure requirements, or notify a proxy of his case might have supported his statement of honest intent. But Thompson's bare assertion of honest intent, without evidence that he took any action consistent with his assertedly honest intent, suggests he belatedly contrived all other explanations to justify his nondisclosure. Thus, the evidence establishes Thompson acted with fraudulent intent in this case.

v.    ***The statements related materially to Thompson's bankruptcy case.***

Finally, the court must determine the statements related materially to the debtor's bankruptcy case. Because full disclosure protects the credibility and functioning of the bankruptcy system, "[t]he threshold to materiality is fairly low." *Home Serv. Oil Co. v. Cecil (In re Cecil)*, 542 B.R. 447, 454 (B.A.P. 8th Cir. 2015) (stating full disclosure is necessary "to give the bankruptcy system credibility and make it function properly and smoothly"); *Cepelak v. Sears (In re Sears)*, 246 B.R. 341, 347 (B.A.P. 8th Cir. 2000) (imposing low threshold to materiality). A statement relates materially to a debtor's bankruptcy case if it "bears a relationship to [his or her] business transactions or estate, or concerns the discovery of assets, business

dealings, or the existence and disposition of his [or her] property." *Palatine Nat'l Bank of Palatine, Illinois v. Olson (In re Olson)*, 916 F.2d 481, 484 (8th Cir. 1990). An omission may be material even if discovery of the omitted information does not result in a recovery for the bankruptcy estate. *Lincoln Sav. Bank v. Freese (In re Freese)*, 460 B.R. 733, 739 (B.A.P. 8th Cir. 2011); *see also Sears*, 246 B.R. at 347 (determining value not determinative).

Thompson's statements related materially to his bankruptcy case. The omitted information bore a strong relationship to his business transactions as a former attorney, the sum of the liabilities in his estate, and the business dealings that precipitated his bankruptcy. His omissions had the result Thompson intended: they prevented his victims from inundating the Fulton County DA's office, Thompson's former criminal attorney, and this court with questions. But his omissions also deprived his victims of the opportunity to participate meaningfully in his bankruptcy—a result that materially affected his case.

Moreover, the court disagrees with Thompson's argument that the nondischargeability of the restitution obligation renders his omission immaterial. The nondischargeability of the restitution obligation does not alter its significant effect on his business dealings and financial condition. And to the extent Thompson is also arguing that the nondischargeability of any other omitted debts—including his obligations to his victims—makes his other omissions immaterial, the court also disagrees. By omitting his victims and the Georgia Bar Client Fund, Thompson made those parties vulnerable in future litigation to attacks concerning the effect of his

discharge on their claims.   Because the effect of his discharge is central to his bankruptcy case, and for the reasons explained above, Thompson's omissions are material.

This element, like all others, is satisfied. Thus, Thompson may not receive a discharge in this case.

## CONCLUSION

For the reasons explained above, the court determines Thompson should not receive a discharge in this case because he knowingly and fraudulently made false oaths in connection with this case within the meaning of § 727(a)(4)(A).   The clerk of court will enter a separate judgment on the record consistent with this opinion.


Dated: 12/1/2020                                    /s/ Brian T. Fenimore
                                                    United States Bankruptcy Judge